UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

DONALD DALE KALMERTON,

          Debtor.
_____

DEMPSEY LAW FIRM, LLP,

          Plaintiff,

v.

DONALD DALE KALMERTON,

          Defendant.

Case No. 12-20544

Chapter 7

Adversary No. 12-2279

_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION TO STRIKE
_____

      The plaintiff, Dempsey Law Firm, LLP, brought this adversary proceeding objecting to the dischargeability of a $500.00 obligation incurred by the debtor, Donald Kalmerton. After the defendant filed his answer, the plaintiff filed a motion to strike portions of the answer, as well as a motion for summary judgment. This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## BACKGROUND

      The following events were summarized in court transcripts and the parties' pleadings and briefs. The Dempsey Law Firm had represented Donald Kalmerton and his company, Fox Valley Petroleum

Services, Inc., on an ongoing basis for several years. Because Kalmerton failed to pay the firm in full for the services rendered, on December 30, 2010, the latter filed a complaint against Kalmerton in the Circuit Court for Winnebago County, Wisconsin, alleging breach of contract. Kalmerton filed an answer and various counterclaims, including breach of contract, professional negligence, slander, libel and false advertising. On July 27, 2011, the state court resolved the professional negligence claim via partial summary judgment and dismissed the slander, libel and false advertising claims. While addressing the professional negligence claim, the state court found that the firm did not pursue a lawsuit[1] on behalf of Kalmerton because the latter was unable to pay the firm, noting no firm was required to provide services without compensation. Kalmerton later failed to appear at the hearing on Dempsey's motion for default judgment on its amended complaint and, accordingly, on September 7, 2011, a default judgment was entered by the state court in the amount of $23,283.81. On September 15, 2011, Dempsey filed a motion for summary judgment seeking resolution of Kalmerton's breach of contract claim. Although contested by Kalmerton, the motion was granted on November 21, 2011, and the debtor was ordered to pay the firm $500.00 in costs.

While issuing the decision on the breach of contract counterclaim brought by Kalmerton, the state court judge made the following findings of fact and conclusions of law:

> What I see here is potentially one of the most severe abuses of the judicial process that

---

[1] The potential lawsuit involved a class action against the principal equipment supplier for Kalmerton's business, Fox Valley Petroleum Services, Inc., due to an alleged illegal preferential pricing program that favored a competitor of Fox Valley and others similarly situated. Although the firm made efforts to recoup damages as a consequence of the supplier's actions, because neither Kalmerton nor his company had the resources to conduct legal proceedings alone against the supplier, the claim was never pursued and the matter was instead referred to state and federal authorities. (*See* Dempsey, Williamson, Kelly & Hertel, LLP, Letter dated August 5, 2009).

2

> I've seen since I've been on the bench. It lacks any credibility. It lacks any legal credibility. It has gotten no consideration. There is no contract. There is no damages against these folks, the plaintiffs in this case, and what I see is this is a huge waste of my time and of the legal resources of Mr. Mynsberge [plaintiff's counsel], and to me this is the reason the court system is flooded with crap like this.
>
> I just absolutely can't believe the amount of time and effort that has been put into this case and there's absolutely no showing whatsoever that there is a contract in this matter, and above and beyond that we have an individual who admits throughout all of the things that I've seen that he couldn't afford to pay them and people aren't required to work for free and I have said that before in this case. And it's to me not even a close call. As I said, there is no consideration. I haven't even been shown a contract. There are no damages that have been shown that are directly related to it if there was any kind of a contract, and there is nothing in this record that indicates to me that there is a legitimate suit against the plaintiffs in this counterclaim; and, as a result, I'm going to grant summary judgment.
>
> And because I think this is such an outrageous case I am going to award $500 in attorney fees as well. I think the process has been abused and I think ... Mr. Mynsberge'[s] law firm deserves part of the money to reimburse the time and effort he had to put into this case and if I could, I would add money for my time and my court staff's time for the taxpayers but I can't do that.

(Transcript of November 10, 2011, hearing in Winnebago County Circuit Court Case 10-CV-2519, p. 5, l. 21- p. 7, l. 4).

The debtor filed a chapter 7 petition on January 19, 2012, and this adversary proceeding followed.

## ARGUMENT

The plaintiff argues the $500.00 obligation is nondischargeable under 11 U.S.C. § 523(a)(6) because it was awarded due to the debtor's willful and malicious continuation of a wholly frivolous counterclaim. The debtor intentionally brought the counterclaim for breach of contract and continued his claim even after the state court had clearly stated that attorneys were not required to work for free. The debtor had no factual or legal basis for his counterclaim and abused the judicial process without

3

excuse and without accountability. *See Matter of Shcolnik*, 670 F.3d 624 (5th Cir. 2012); *Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006); *In re Keaty*, 397 F.3d 264 (5th Cir. 2005). In a separate motion, the plaintiff argues that portions of the debtor's answer and associated documents should be stricken as immaterial, impertinent and/or scandalous.

The debtor argues that his actions were in no way malicious and, by filing the counterclaims against the firm in state court, he was merely pursuing his legal rights under the law. The $500.00 obligation is, therefore, dischargeable.

DISCUSSION

*Motion for Summary Judgment*.

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

First, as a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory*, 136 F.3d 1134, 1136 (7th Cir. 1998). Additionally, the forum state's law of issue preclusion applies in determining the dischargeability of debt. *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *Matter of Bulic*, 997 F.2d 299, 304 n. 6 (7th

4

Cir. 1993)). Accordingly, whether issue preclusion applies must be determined according to Wisconsin law.

Under Wisconsin law issue preclusion is a doctrine designed to limit relitigation of issues that were contested in a previous action between the same or different parties. *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327, 329 (1993) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865 (1955)). Accordingly, when an issue is actually litigated and determined by a valid final judgment and the determination is essential to the judgment, it is conclusive in a subsequent action whether on the same or a different claim. *Landess v. Schmidt*, 115 Wis.2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) (citing Restatement (Second) of Judgments § 27 (1982)). However, where appropriate a fundamental fairness analysis should be conducted when determining whether it is equitable to apply issue preclusion in a given case. *Michelle T. by Sumpter*, 173 Wis.2d at 698, 495 N.W.2d at 335.

In Wisconsin courts, issue preclusion is a two-step analysis. The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a party or has sufficient identity of interests to comport with due process. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 224, 594 N.W.2d 370 (1999). Mr. Kalmerton was a party to all previous actions, so privity is not a question the Court needs to address.

The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors the court is to consider in determining fairness present a question of law. *Paige K.B.*, 226 Wis.2d at 225, 594 N.W.2d at 377. The factors that courts may consider when undertaking the

5

second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. v. Crozier*, 173 Wis.2d at 689, 495 N.W.2d at 330-31 (footnote omitted).

The state court judgment is valid and final and Mr. Kalmerton had an opportunity to appeal that judgment. He did not, and instead he filed a bankruptcy case. Nevertheless, the sanction award, issued apparently sua sponte, requires a closer look.

The state court did not specify on the record the legal support for its sanction. The plaintiff argues the state court utilized Wis. Stat. § 802.05, which provides the following:

> (2) Representations to court. By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following:
>
> > (a) The paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
> >
> > (b) The claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
> >
> > (c) The allegations and other factual contentions stated in the paper have evidentiary

6

> support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (d) The denials of factual contentions stated in the paper are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Wis. Stat. § 802.05(2). The sanction against Kalmerton appears to have been awarded pursuant to subsections (a) and/or (b), since the state court's findings are most clearly categorized as harassing and frivolous conduct. Consequently, if a party engages in any such conduct, he or she may be subject to sanctions, upon the occurrence of the following:

> (3) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that sub. (2) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation in accordance with the following:
>
> (a) How initiated.
>
> 1. 'By motion.' A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate sub. (2). The motion shall be served as provided in s. 801.14, but shall not be filed with or presented to the court unless, within 21 days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion reasonable expenses and attorney fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
>
> 2. 'On court's initiative.' On its own initiative, the court may enter an order describing the specific conduct that appears to violate sub. (2) and directing an attorney, law firm, or party to show cause why it has not violated sub. (2) with the specific conduct described in the court's order.

Wis. Stat. § 802.05(3)(a). There is no evidence before this Court showing either that a motion for sanctions was filed by the plaintiff or an order to show cause was entered by the court prior to the entry

7

of the sanction award. Therefore, it appears the debtor did not have an opportunity to contest the sanction as it probably came as a surprise.

Additionally, a close reading of the state court's findings demonstrates that the debtor is not precluded from contesting the nondischargeability of the sanction award. Section 523(a)(6) of the Bankruptcy Code reads in pertinent part "[a] discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." To prevail under section 523(a)(6), a creditor must prove by a preponderance of the evidence that the debtor's conduct was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991). In *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998), the Supreme Court stated that "willful" for purposes of section 523(a)(6) means actual intent to cause injury, not merely the commission of an intentional act that leads to injury.

The plaintiff is correct that other courts have found similar sanction awards nondischargeable under section 523(a)(6). *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 71 (2$^d$ Cir. 2006) (trial court's determination that plaintiff unreasonably filed lawsuit lacking any colorable claim and therefore awarding sanctions in form of costs of defending lawsuit pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 satisfied § 523(a)(6)'s exception to discharge where trial court did not specifically use terms "malicious" or "malice" but rendered factual findings equivalent to malice); *In re Keaty*, 397 F.3d 264, 273 (5th Cir. 2005) (affirming determination of nondischargeabilty under § 523(a)(6) of sanctions awarded by state court for violating state's version of Fed. R. Civ. P. 11); *In re Diamond*, 285 F.3d 822, 829 (9th Cir. 2002) (state court jury finding that debtor "intentionally caused injury" to creditor "without just cause" was entitled to preclusive effect for purposes of § 523(a)(6)"); *Hughes v. Arnold*,

393 B.R. 712 (E.D. Cal. 2008) (affirming bankruptcy court's ruling that state court judgment awarding attorneys' fees and costs relating to improper sexual harassment action was nondischargeable under § 523(a)(6)); *In re Luca*, 422 B.R. 772 (Bankr. M.D. Fla. 2010) (finding where state court had determined that appeal by debtor was frivolous and awarded attorney's fees to plaintiff, award was sufficient to defeat motion to dismiss § 523(a)(6) claim).

Nevertheless, contempt sanctions are not nondischargeable *per se.* In *In re Suarez*, 400 B.R. 732, 740 (B.A.P. 9th Cir. 2009), the bankruptcy appellate panel considered whether conduct leading to a judgment for contempt of court could be for a willful and malicious injury under section 523(a)(6). In conducting its statutory analysis, the panel first examined the plain language of section 523(a), observing that it "does not make 'contempt' sanctions nondischargeable *per se*, and neither does any other subpart of section 523(a)." *Id*. at 737. Because the statutory language did not support a *per se* rule, the panel concluded that "whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'" Id.

Likewise, in *In re Anstead*, 436 B.R. 497 (Bankr. N.D. Ohio 2010), a sanction award had been entered against a debtor in Ohio probate court proceedings, based on his filing a frivolous counterclaim against those complaining of his alleged conversion of assets of a probate estate for intentional infliction of emotional distress, on his failure to attend a scheduled deposition, and on his filing of a frivolous motion for a new trial. The bankruptcy court determined the award was not entitled to collateral estoppel effect in the adversary proceeding to except the debtor's obligation from discharge as a "willful and malicious injury." The bankruptcy court found that the probate court's determination

9

as to the frivolous nature of the debtor's conduct, without any further specifications as to the particulars of that conduct, as well as no express findings as to the debtor's intent, was not a determination that he possessed the requisite specific intent to cause harm, of a kind needed to except the debt from discharge under section 523(a)(6). *Id*. at 502-03.

A close scrutiny of the state court findings in this case results in a similar determination. Below are excerpts of the court's findings most critical of the debtor:

> What I see here is one of the most severe abuses of the judicial process that I've seen since I've been on the bench. It lacks any credibility. It lacks any legal credibility. ... [T]his is a huge waste of my time and of the legal resources of [plaintiff's counsel], and to me this is the reason the court system is flooded with crap like this.
>
> I just absolutely can't believe the amount of time and effort that has been put into this case .... And it's to me not even a close call. [T]here is nothing in this record that indicates to me that there is a legitimate suit against the plaintiffs in this counterclaim[.]
>
> And because I think this is such an outrageous case I am going to award $500 in attorney fees as well. I think the process has been abused and I think [plaintiff's counsel] deserves part of the money to reimburse the time and effort he had to put into this case and if I could, I would add money for my time and my court staff's time for the taxpayers but I can't do that.

(Transcript of November 10, 2011, hearing in Winnebago County Circuit Court Case 10-CV-2519, p. 5, l. 21- p. 7, l. 4).

All of this shows that the debtor acted intentionally, but it does not show that he acted maliciously, with intent to do unjustifiable harm to the Dempsey firm, as opposed to furthering his own interests, as he argues. Intent of that nature requires a hearing, and summary judgment cannot be granted on this record.

*Motion to Strike*.

10

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may either strike on its own or on a motion by a party and has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter. *Id.*; *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Generally, motions to strike are not helpful when the opposing party is acting pro se, and the pleader is not focused on or does not understand the proper legal standards. Such is obviously the case here. While this Court believes it has an adequate filter for improper allegations, it will address the plaintiff's motion.

The plaintiff requests that ¶¶ 11- 12 of the debtor's answer be struck as they are immaterial and scandalous. Those paragraphs read as follows:

> Plaintiff knows many of the facts as described by Plaintiff in Complaint filed 4/23/2012 are incorrect and disputed by Defendant. Kalmerton has used Dempsey via Hertel for various matters beginning in 1985. The facts as stated by Defendant were confirmed by Partner Hertel in an Affidavit placed in evidence in Case No 10-CV2519.
>
> Plaintiff solicited Defendant [to] begin a Class Action Law Suit against Dresser Wayne[.] Kalmerton was to contact other parties to join the action in a Class Action Legal Proceeding. Plaintiff agreed to recover monetary damages from Dresser Wayne Industries Predatory Pricing Scheme. That scheme initially damaged Defendant by the Hands of Dresser Wayne after the Class Action Legal Action failed. Dempsey Law entered into a contract to recover damages and deliberately failed to act in good faith. Under Wisconsin Law the ability to recover damages transfer to Dempsey Law. Defendant pursued legal action against Plaintiff for direct and indirect monetary damages.

(Donald D. Kalmerton Answer ¶¶ 11 - 12, filed May 25, 2012). The state court found there was no liability on the part of the law firm to the defendant under any theory. These issues cannot be revisited by this Court. This makes the allegations immaterial to the issue at hand, and they are stricken.

The plaintiff requests that ¶ 13 of the debtor's answer be struck as immaterial and false. That

11

paragraph states:

> Representative Mynsberg [sic] after finally reading the complete file confirmed there was in fact a contract, but in a letter to the Judge, asked not to have the contract enforced on behalf of Defendant Kalmerton. Plaintiff during the discovery process has conceded to a minimum of $867,000.00 the Defendant suffered by the illegal activities of Dresser Wayne.
>
> Supported by Affidative [sic] of 5/23/2012 by Donald Kalmerton.

(Donald D. Kalmerton Answer ¶ 13, filed May 25, 2012). As above, these allegations were decided against the defendant, cannot be relitigated, and are immaterial to this proceeding. They are stricken.

The plaintiff requests that ¶ 15 - 16 of the debtor's answer, as well as the accompanying letters, be struck as the references made were to compromise offers and negotiations. Those paragraphs are as follows:

> Kalmerton responded to the initial Complaint with Breach of Contract Claims. Dempsey Law Firm Denied there was a contract initially. Dempsey Law then tried to withdraw from the legal proceedings. These facts are all in the trial documents. 10-CV-2519.
>
> Representative Mynsberg [sic] again tried in June of 2011 to withdraw the legal matter against Kalmerton in June of 2011. Defendant continued with the process due to a legal obligation placed on Donald Kalmerton to make every honest legal effort to recovery [sic] monies to pay creditors both, secured and unsecured. Dempsey Law failed to do as the Law Firm via Partner Hertel had agreed to do as supported by letters, Discovery Documents in 10-CV-2519. Supported by Defense Exhibit Documents DDK1, DDK 6, Exhibit CH1.

(Donald D. Kalmerton Answer ¶¶ 15 - 16, filed May 25, 2012). Rule 408(a) prohibits admission of evidence relating to a compromise or offers to compromise when such evidence is used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). This rule does not preclude the admission of all compromise evidence. Rule 408(b) explicitly permits admission of such evidence if offered for another purpose. Permissible purposes under Rule 408(b) include "proving a witness's bias or prejudice, negating a

contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."
Fed. R. Evid. 408(b). That said, the allegations are again immaterial and are stricken.

The plaintiff requests that ¶ 18 be struck as scandalous and false. That paragraph provides the following:

> Defendant was not awarded judgment, in part because Defendant was not allowed to give oral argument. The Judge would not allow any oral evidence.

(Donald D. Kalmerton Answer ¶ 18, filed May 25, 2012). If true, the defendant's remedy was to appeal the final order. Since he did not, it cannot be collaterally attacked. The allegation is immaterial and is stricken.

Finally, the plaintiff requests that a portion of ¶ 21(b) be struck as false and scandalous. That portion reads as follows:

> ... The Plaintiffs have admitted to the damages they caused by their lack of full filling [sic] the contract they had entered into. This was confirmed by a letter Mynsberg [sic] signed on Dempsey letter head stationary to the Judge very late in the trial.

(Donald D. Kalmerton Answer ¶ 21(b), filed May 25, 2012). For the same reasons stated above, this allegation is stricken.

*Conclusion*

For the reasons stated above, the plaintiff's motion for summary judgment on the nondischargeability of this debt under 11 U.S.C. § 523(a)(6) is denied. The plaintiff's motion to strike is granted and the paragraphs identified above, as well as any accompanying documents, are stricken

13

from the answer as immaterial. Further proceedings on the merits will be scheduled by the court.

November 1, 2012

                                            Margaret Dee McGarity
                                            United States Bankruptcy Judge